1
2
3
4
5
6          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
7                   AT SEATTLE

8   PABLO ESTERSON, as attorney-in-fact for    )
9   LILA GRACIELA KOHN GALE,                    )   COMPLAINT
                                                )
10             Plaintiff                        )   IN ADMIRALTY AND AT LAW
                                                )
11  vs.                                         )   (JURY DEMAND)
                                                )
12                                              )
13  HOLLAND AMERICA LINE-USA INC.;              )   NO.
    HOLLAND AMERICA LINE INC.;                  )
14  HOLLAND AMERICA LINE N.V. LLC;              )
    and HAL ANTILLEN N.V.,                      )
15                                              )
16             Defendants                       )
    _____        )
17

18              PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

19         Plaintiff, Pablo Esterson, as attorney-in-fact for Lila Graciela Kohn Gale, by and through the

20  undersigned counsel, hereby sues Defendants, Holland America Line-USA Inc.; Holland America

21  Line Inc.; Holland America Line N.V. LLC; and, HAL Antillen N.V., and alleges:

22

23                    I.       GENERAL ALLEGATIONS

24                  THE PARTIES, JURISDICTION, AND VENUE

25

26         1.      Plaintiff, Pablo Esterson, as attorney-in-fact for Lila Graciela Kohn Gale, is a resident

27  of the State of Illinois.

28         2.      Pablo Esterson is the son of Lila Graciela Kohn Gale ("Mrs. Gale").  He has authority

COMPLAINT - 1

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE:  (206) 624-3060

1  to act for Mrs. Gale in the event that she is incapacitated through a durable power of attorney dated

2  May 14, 2012. (Attached hereto as Exhibit A.).  Through the execution of the power of attorney he is

3  authorized to bring litigation on Mrs. Gale's behalf.  (*Id*. at ¶ 1 (j)).

4

5  3.   Mrs. Gale is a resident of the State of Illinois.  Ms. Gale was a resident of the State of

6  Illinois at the time of the underlying events.

7  4.   As a direct and proximate result of the conduct forming the basis of the litigation, Mrs.

8  Gale was rendered incapacitated and suffered severe and devastating neurological, cognitive, and

9

10  physical injuries.  Pablo Esterson brings this action on her behalf as her duly appointed attorney-in-

11  fact.

12  5.   Defendant, Holland America Line-USA Inc., is a Delaware Corporation with its

13  principal place of business in Seattle, Washington, and the owner, operator, or owner *pro hac vice* of

14

15  the cruise vessel MS *Zuiderdam* on which the subject incident occurred.  At all times material,

16  Holland America Line-USA Inc. was the agent of the other Defendants named in this action.

17  6.    Defendant, Holland America Line Inc., is a Washington Corporation with its principal

18  place of business in Seattle, Washington, and the owner, operator, or owner *pro hac vice* of the cruise

19

20  vessel MS *Zuiderdam* on which the subject incident occurred.   At all times material, Holland

21  America Line Inc. was the agent of the other Defendants named in this action.

22  7.   Defendant, Holland America Line N.V. LLC, is a Curacao Corporation and the owner,

23  operator, or owner *pro hac vice* of the cruise vessel MS *Zuiderdam* on which the subject incident

24  occurred.

25  8.   Defendant, HAL Antillen Line N.V., is a Curacao Corporation and the owner,

26  operator, or owner *pro hac vice* of the cruise vessel MS *Zuiderdam* on which the subject incident

27  occurred.

28

COMPLAINT - 2

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE:  (206) 624-3060

9.     At all times relevant and material hereto, Defendants acted through their agents, employees, and/or representatives, who in turn acted within the scope of their employment and/or agency.

10.    The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 because the amount in controversy exceeds the sum or value of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity between the parties hereto. The Court also has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

11.    The Court has personal jurisdiction over Defendants.

12.    Venue is proper in this Court under 28 U.S.C. § 1391 (b) and (c) as the Defendants are subject to personal jurisdiction in this Judicial District and therefore are deemed to reside here.  The cruise line ticket at issue also requires that suit be brought in this Court.

13.    All conditions precedent for filing and maintaining this action have been satisfied, waived, or do not apply.

II.      <u>INTRODUCTION</u>

14.    This case arises out of acts of shocking and appalling negligence and callous disregard for human life.  Four hours into the underlying voyage Mrs. Gale suffered a stroke.  The dire nature of her emergency medical condition was readily apparent and acknowledged by the ship physician of the MS *Zuiderdam,* who failed to act reasonably under the circumstances.  At that early juncture in the voyage the MS *Zuiderdam* was in close proximity to South Florida, where several comprehensive stroke centers could have promptly and properly treated Mrs. Gale.  The Defendants should have immediately made the decision to air-evacuated Mrs. Gale from the vessel so that she could receive timely and proper care from physicians at a comprehensive stroke center.  Instead of being properly

COMPLAINT - 3

assessed and properly air-evacuated to a competent and capable medical facility, Mrs. Gale was treated without basic regard to her needs by Defendants. She went untreated on the vessel and declined as the hours passed by. She was eventually loaded onto a tugboat in the middle of the night and shipped to a recognized poorly equipped hospital that was ill-suited to provide any care or treatment for Mrs. Gale. Prior to transferring Mrs. Gale onto the tug boat the Defendants failed to do even the bare minimum due diligence for continuity of care such as confirming that the hospital could provide care and treatment for a stroke patient, that it had a functioning CT scan, that it had a neurosurgery department, that it had neurological specialists, or even whether the local airport for medivac flight was opened or closed. Because the Bahamian hospital chosen by Defendants could not provide care and treatment for a stroke patient, did not have a functioning Ct scan, did not have a neurosurgery department, did not have neurological specialists and the local airport was in fact closed, Mrs. Gale was left without necessary, timely and appropriate medical care. She was eventually flown back to Broward County, Florida after an excessive and unreasonable 15-hour delay from the onset of her stroke symptoms. During the unreasonable delay her brain was slowly dying from the mounting pressure of blood crushing down on her brain tissue. Time was of the essence to save Mrs. Gale's slowly dying brain, and Defendants completely failed her. As a direct and proximate result she suffered catastrophic injuries from which she will not recover. Lila Gale's brain and body was decimated as a result of Defendants' wanton, willful, and outrageous conduct.

### III.     FACTUAL BACKGROUND

15.     Plaintiff entered into a contract of carriage with Defendants for the purpose of a cruise aboard the MS *Zuiderdam*. The cruise embarked from Fort Lauderdale, Florida, on March 21, 2018, at approximately 4:00 p.m.

16.     Defendants, as common carriers, are engaged in the business of providing vacation

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

cruises to the public aboard vessels including the MS *Zuiderdam*. At all times material hereto, Defendants owned, operated, managed, maintained, and/or controlled the MS *Zuiderdam*.

17. Defendants, through online, television, radio and print advertisements specifically market their cruises as family friendly vacations with extensive offerings and activities for people of all ages and abilities.

18. As part of providing vacation cruises, Defendants are obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and medical evacuation decisions.

19. As part of providing vacation cruises, Defendants advertised that the ship's onboard medical center was staffed by licensed physicians and critical care nurses and that it is well equipped to handle most emergencies.

20. Defendants charged money to passengers for medical services provided.  As such, Defendants are in the business of providing medical services to passengers for profit and owe a non-delegable duty to provide competent and non-negligent medical care and services.

21. Defendants owned, operated, controlled, and/or maintained the medical center aboard the MS *Zuiderdam*.  Defendants maintained a Fleet Medical Operations division at corporate headquarters in Seattle.  The onboard medical center and Fleet Medical Operations division work as a team in the event of medical evacuation emergency.  A structured emergency response team onboard each of Defendants' vessels run monthly practice drills.  Defendants are aware that medical emergencies may arise on its vessels and are aware of the essential need to promptly evacuate passengers suffering from serious medical emergencies.

22. Defendants, through their shore-side Fleet Medical Operations division, had the ability to control and monitor each and every step taken by its medical staff onboard via telephone, video

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE:  (206) 624-3060

conference, skype, or otherwise.

23.   Defendants' officials and employees had the ability to monitor and participate in safety, security, and medical emergencies onboard the vessel by communicating with the ship's crew via telephone, videoconference, Skype and other means of communication. Defendants, through both the crew onboard and their shore-side officials and employees, who acted in consultation with one another, failed to properly care and promptly and properly evacuate Mrs. Gale.

24.   Defendants advertise that they are "committed to providing the highest quality onboard medical care for ship guest and crewmembers and providing excellent first response and emergency care to passengers until they can be transferred to a shoreside medical facility."

25.   Defendants advertise that they are recognized as an "industry leader in cruise medicine."

26.   Defendants advertise that it was the first cruise line to add thrombolytic treatment to its on-board medical services.

27.   Defendants advertise that its ships are able to access "any medical specialist through the University of Texas Medical Branch in Galveston."  And that "all ships have digital radiology."

28.   Defendants advertise that they have procedures for emergency disembarks "via Coast Guard helicopter if medically appropriate and logistically possible in relation to the ship's distance from land."

29.   Upon information and belief, the Master of MS *Zuiderdam* was consulted regarding Mrs. Gale's deteriorating condition and the emergent nature of the situation.  The Master is an employee or agent of Defendants and had the ability to divert or control the vessel or make the appropriate decision to afford one of his passengers the medical care and treatment she desperately needed.

COMPLAINT - 6

30.     At all times Defendants were vicariously liable for the negligence of the medical staff and doctors onboard the MS *Zuiderdam*, who were employees, apparent agents, actual agents, or joint venturers of Defendants.

31.     At all times Defendants were vicariously liable for the negligence of the non-medical personnel onboard the MS *Zuiderdam*, who were employees, apparent agents, actual agents, or joint venturers of Defendants.

32.     At all times Defendants had control or the right to control all persons working in its medical departments, including the Doctors and personnel that improperly treated and negligently mismanaged Mrs. Gale's condition.

33.     Mrs. Gale and her family relied upon Defendants' representations regarding its available shipboard medical facility with its qualified and competent physicians in their decision to purchase the cruise and contract with Defendants.

34.     On March 21, 2018, Mrs. Gale was on board the MS *Zuiderdam* for a cruise from Fort Lauderdale to the Panama Canal. Mrs. Gale was a paying passenger.

35.     On the evening of March 21, 2018, at approximately 8:30 p.m., Mrs. Gale lost consciousness while having dinner.  A medical team from the MS *Zuiderdam* was dispatched and noted her to be confused, drowsy and with slurred speech.

36.     Mrs. Gale was transported to the medical center of the MS *Zuiderdam* where she was given a provisional diagnosis of "Severe Stroke" or "Query Ruptured Cerebral aneurysm" by the MS *Zuiderdam's* Senior Physician, Dr. Socrates Lopez.

37.     In light of the symptoms and manifestations exhibited by Mrs. Gale, any reasonably prudent healthcare provider in Dr. Socrates Lopez's position would have known that a medical air-evacuation to a comprehensive stroke center was medically necessary.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

1    38.    An air-evacuation was both medically necessary and operationally feasible.

39.    At all times material, Dr. Socrates Lopez was an employee or agent of Defendants, as its ship physician and was at all time material acting within the course and scope of her employment or agency with Defendants.

40.    At the time that Mrs. Gale presented to the ship's medical center the voyage was in its very early stages and the vessel was likely less than 100 miles from the South Florida coast, within quick reach of several primary and comprehensive stroke centers.

41.    Dr. Socrates Lopez assessed Mrs. Gale and noted that she required (1) a CT Scan of the brain and (2) an emergent consult by a neurologist or neurosurgeon.

42.    More than two hours passed as Mrs. Gale lay intubated in the unequipped medical center of the MS *Zuiderdam*.  Dr. Socrates Lopez noted that her condition deteriorated as the time passed.  Notwithstanding, he utterly failed to properly assess the situation and order an air-evacuation.

43.    At approximately 11:00 p.m. Mrs. Gale was transported off the MS *Zuiderdam* onto a tug boat and taken to Rand Memorial Hospital in Freeport, Bahamas.

44.    The medical staff and personnel on the MS *Zuiderdam* failed to do even the bare minimum due diligence for continuity of care such as confirming that the hospital could provide care and treatment for a stroke patient, that it had a functioning CT scan, that it had a neurosurgery department, that it had neurological specialists, or even whether the local airport for medivac flight was opened or closed

45.    Instead of being air evacuated to Miami or Fort Lauderdale, where acute comprehensive stroke care could be timely provided, Mrs. Gale was taken off the ship and put on a tug-boat towards shore, arriving at Rand Memorial Hospital at 12:06 a.m. on March 22, 2018.

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

Instead of arriving at a hospital with a comprehensive stroke center, Mrs. Gale was taken to a hospital without a functioning CT scan, without a neurosurgery department, without neurological specialists, and without an open and operational local airport for a prompt medivac flight.

46.     Upon arrival at Rand Memorial Hospital it was clear that they were not capable of adequately treating Mrs. Gale.  In the absence of a neurosurgery consult, the attending physician made the appropriate decision to transfer Mrs. Gale to Broward Health Medical Center, a comprehensive stroke center— decision that should have been made by Dr. Socrates Lopez hours earlier.  However, by the time Mrs. Gale arrived at the Bahamian hospital, the airport was already shut down for the night.  She was forced to wait until the next morning to be flown via an air ambulance from the Bahamas to Fort Lauderdale, Florida, while the bleeding and pressure in her brain continued to worsen, killing more and more brain tissue with each passing hour.

47.     As a direct result of the failure to air evacuate Mrs. Gale from the ship, she did not arrive at Broward Health Medical Center, a facility more than capable of appropriately and timely treating her, until more than fifteen (15) hours after the onset of her stroke symptoms.

48.     Due to the decision of Defendants and Defendants' agents not to order an emergency air evacuation, divert or speed the vessel's return to port, or otherwise ensure that Mrs. Gale was promptly transported to a medical facility capable of treating her, there was an unreasonably excessive delay in obtaining the necessary medical care that she urgently needed.

49.     At Broward General Medical center Mrs. Gale was diagnosed with a major intracerebral hemorrhage.  She was taken into surgery where she underwent a right parietal craniotomy and evacuation of the hemorrhage.  However, because of the Defendants unreasonable delay and failure to timely air evacuate her off the ship her condition worsened to the point where the damage was irreversible.

COMPLAINT - 9

50.     Defendants owed a non-delegable duty to provide competent, non-negligent medical care and treatment to Mrs. Gale.  Defendants' non-delegable duty arises as a result of the contract for payments for medical treatment charged to passengers including Mrs. Gale, as well as Defendants' undertaking of the operation of a medical center onboard its vessel.

51.     As a direct and proximate result of Defendants' negligence, Mrs. Gale has been left with permanent devastating physical, cognitive and neurological deficits.  An excessive amount of her brain tissue died and will never function again due to the unreasonable delay in receiving competent treatment.  She now requires intensive medical care and treatment around the clock.  She was rendered comatose for many weeks and was put on a ventilator to stay alive. She suffered and continues to suffer from paralysis and loss of mobility.  Her muscles have atrophied and wasted away due to her limitations.  She has lost basic mental abilities such as memory, concentration, perception and understanding.  Her ability to speak has been greatly impaired.  She has difficulty with simple tasks such as telling time as her brain cannot make sense of what her eyes see.  She has severe problems with spatial reasoning and basic object recognition.  She cannot walk and barely has movement of the hands.  Her creative abilities and ability for imagination have been decimated.  She will never be the same and will require care and treatment for the remainder of her life.  She has sustained damages that include, but are not limited to, pain and suffering, physical injuries, disability, significant disfigurement, embarrassment, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care treatment expenses, loss of earnings, loss of the ability to earn money in the future, and a shortened life span. Her recovery has been a grueling and tragic course. Because of Defendants' negligence she must endure this painful existence until she perishes.

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE:  (206) 624-3060

IV.   COUNT I – NEGLIGENCE

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 51 of this Complaint.

52.   In light of Defendants' experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses  and emergencies experienced by past cruise passengers, it was reasonably foreseeable to Defendants that the MS *Zuiderdam* would have passengers similar in age to Plaintiff, and passengers with common illnesses and emergencies such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

53.   Defendants owed Plaintiff the duty of exercising reasonable care under the circumstances.  In particular, as Plaintiff suffered a stroke onboard the MS *Zuiderdam* and was taken to the ship's medical center, Defendants owed Plaintiff the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

54.   Defendants breached its duty of protecting Plaintiff from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Defendants breached its duty in one or more of the following ways:

a.   Defendants failed to properly assess the condition of Mrs. Gale;

b.   Defendants failed to timely diagnose Mrs. Gale;

c.   Defendants failed to properly treat Mrs. Gale;

d.   Defendants failed to perform or arrange for appropriate diagnostics testing given Mrs. Gale's condition;

e.   Defendants failed to obtain consultations with appropriate specialists;

COMPLAINT - 11

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE:  (206) 624-3060

f.     Defendants failed to properly monitor Mrs. Gale;

g.     Defendants failed to air-evacuate Mrs. Gale from the ship so that she could promptly receive treatment;

h.     Defendants failed to timely divert the ship back to port in the United States so that Mrs. Gale could promptly receive treatment;

i.     Defendants failed to evacuate Mrs. Gale by speed boat back to the United States;

j.     Defendants failed to contact the United States Coast Guard regarding the need for an air evacuation;

k.     Defendants failed to properly consult qualified shore-based personnel regarding Mrs. Gale's condition;

l.     Defendants failed to obtain a proper medical opinion regarding Mrs. Gale's condition;

m.     Defendants failed to utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. Gale's condition;

n.     Defendants failed to develop and institute adequate procedures and policies to address Mrs. Gale's medical situation;

o.     Defendants provided medical opinions and/or advice when they were not properly qualified and lacked proper licenses;

p.     Defendants failed to determine if Rand Memorial Hospital was capable of treating Mrs. Gale;

q.     Defendants failed to determine or inquire if Rand Memorial Hospital was equipped with functioning CT Scan machine to properly diagnose Mrs. Gale;

r.     Defendants failed to determine or inquire if Rand Memorial Hospital had proper medical specialists, such as neurosurgeons, capable of treating Mrs. Gale;

s.     Defendants failed by sending Mrs. Gale to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

t.     Defendants failed to ascertain, inquire, or ensure that Mrs. Gale could be transferred from the Bahamas to the United States expeditiously

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE: (206) 624-3060

should she be unable to be treated at Rand Memorial Hospital;

u.      Defendants failed to ascertain, inquire, or plan for the event that the airport in the Bahamas would be closed overnight, resulting in further excess and unreasonable delay to Mrs. Gale;

v.      Defendants failed to appreciate the severity of Mrs. Gale's worsening condition;

w.      Defendants failed to perform any procedure to Mrs. Gale's medical benefit;

x.      Defendants failed to properly advise Mrs. Gale's family of her urgent condition;

y.      Defendants failed to properly advise Mrs. Gale's family of her transfer options;

z.      Defendants failed to properly advise Mrs. Gale's family of her medical disembarkation options;

aa.     Defendants failed to receive informed consent to transfer Mrs. Gale to Rand rather than a comprehensive stroke center;

bb.     Defendants failed to properly ascertain sufficient information to determine where Mrs. Gale should be transferred;

cc.     Defendants deviated from the standard of care for treating patients in Plaintiff's condition.

55.     Defendants knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Defendants.  Defendants are aware that passengers may suffer from life threatening conditions such as stroke, and are aware of the urgent need to air evacuate such patients to competent medical centers capable of providing treatment.

56.     As a direct and proximate result of Defendants breaching its duty to Mrs. Gale, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Gale had received the appropriate care and treatment by being timely evacuated from the ship, she would not have

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

suffered such devastating injuries to her brain and body.

57.     Defendants are liable for punitive damages because they breached their duty to Mrs. Gale by conducting themselves in a wanton, willful and/or outrageous manner.   Mrs. Gale's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead, she was delayed by Defendants in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Defendants for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

## V.     COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL

### (Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 51 of this Complaint.

58.     In light of Defendants' experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to Defendants that the MS *Zuiderdam* would have passengers similar in age to Plaintiff, and passengers with common illnesses and emergencies such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

59.     Defendants, through its non-medical personnel, including its officers, directors, employees, agents, servants and/or persons otherwise authorized to act on behalf of Defendants, both on board the MS *Zuiderdam* and located at Defendants' shore-side offices, owed Plaintiff the duty of exercising reasonable care under the circumstances. In particular, as Plaintiff suffered a stroke

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE: (206) 624-3060

onboard the MS *Zuiderdam* and was taken to the ship's medical center, Defendants owed Plaintiff the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

60.     Defendants, through the negligence of its non-medical personnel, breached its duty to Plaintiff to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Defendants breached its duty in one or more of the following ways:

        a.      Defendants failed to properly assess the condition of Mrs. Gale;

        b.      Defendants failed to timely diagnose Mrs. Gale;

        c.      Defendants failed to properly treat Mrs. Gale;

        d.      Defendants failed to perform or arrange for appropriate diagnostics testing given Mrs. Gale's condition;

        e.      Defendants failed to obtain consultations with appropriate specialists;

        f.      Defendants failed to properly monitor Mrs. Gale;

        g.      Defendants failed to air-evacuate Mrs. Gale from the ship so that she could promptly receive treatment;

        h.      Defendants failed to timely divert the ship back to port in the United States so that Mrs. Gale could promptly receive treatment;

        i.      Defendants  failed to evacuate Mrs. Gale by speed boat back to the United States;

        j.      Defendants failed to contact the United States Coast Guard regarding the need for an air evacuation;

        k.      Defendants failed to properly consult qualified shore-based personnel regarding Mrs. Gale's condition;

        l.      Defendants failed to obtain a proper medical opinion regarding Mrs. Gale's condition;

COMPLAINT - 15

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE:  (206) 624-3060

1

2        m.    Defendants failed to utilize "Telemedicine" and other resources on the
3                 vessel to properly assess Mrs. Gale's condition;

4        n.    Defendants failed to develop and institute adequate procedures and
5                 policies to address Mrs. Gale's medical situation;

6        o.    Defendants provided medical opinions and/or advice when they were
7                 not properly qualified and lacked proper licenses;

8        p.    Defendants failed to determine if Rand Memorial Hospital was capable
9                 of treating Mrs. Gale;

10       q.    Defendants failed to determine or inquire if Rand Memorial Hospital
11                was equipped with functioning CT Scan machine to properly diagnose
                  Mrs. Gale;

12       r.    Defendants failed to determine or inquire if Rand Memorial Hospital
13                had proper medical specialists, such as neurosurgeons, capable of
                  treating Mrs. Gale;

14

15       s.    Defendants failed by sending Mrs. Gale to a geographically farther
16                location than the vessel from a medical center capable and equipped to
                  treat her;

17       t.    Defendants failed to ascertain, inquire, or ensure that Mrs. Gale could
18                be transferred from the Bahamas to the United States expeditiously
                  should she be unable to be treated at Rand Memorial Hospital;

19

20       u.    Defendants failed to ascertain, inquire, or plan for the event that the
21                airport in the Bahamas would be closed overnight, resulting in further
                  excess and unreasonable delay to Mrs. Gale;

22       v.    Defendants failed to appreciate the severity of Mrs. Gale's worsening
23                condition;

24       w.    Defendants failed to perform any procedure to Mrs. Gale's medical
25                benefit;

26       x.    Defendants failed to properly advise Mrs. Gale's family of her urgent
                  condition;

27

28       y.    Defendants failed to properly advise Mrs. Gale's family of her transfer
                  options;

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

z.      Defendants failed to properly advise Mrs. Gale's family of her medical disembarkation options;

aa.     Defendants failed to receive informed consent to transfer Mrs. Gale to Rand rather than a comprehensive stroke center;

bb.     Defendants failed to properly ascertain sufficient information to determine where Mrs. Gale should be transferred;

cc.     Defendants deviated from the standard of care for treating patients in Plaintiff's condition.

61.     Defendants, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Defendants.

62.     As a direct and proximate result of Defendants breaching its duty to Mrs. Gale, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Gale had received the appropriate care and treatment by being timely evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

63.     Defendants are liable for punitive damages because they breached their duty to Mrs. Gale by conducting themselves in a wanton, willful and/or outrageous manner.  Mrs. Gale's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead, she was delayed by Defendants in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Defendants for compensatory damages, punitive damages, interest, court costs, and  all other relief recoverable under law or as this Court deems just and proper.

VI.     COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL

(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

COMPLAINT - 17

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 51 of this Complaint.

64.     Defendants' medical personnel, including the doctors and nurses on board the MS *Zuiderdam*, were the employees, agents, servants and/or persons otherwise authorized to act on behalf of Defendants. Thus, Defendants is vicariously liable for the acts and/or omissions of its medical personnel.

65.     Defendants acknowledged that its medical personnel, including the doctors and nurses onboard the MS *Zuiderdam*, would act for it, and the medical personnel manifested an acceptance of the undertaking. For example: (1) Defendants directly paid the medical personnel for their work in the medical center onboard the MS *Zuiderdam*; (2) the medical center on board the MS *Zuiderdam* was created, owned and operated by Defendants; (3) the medical personnel on board the MS *Zuiderdam* worked at what Defendants describes in its advertising as Defendants' medical center; and (4) Defendants knowingly provided, and the medical personnel on board the MS *Zuiderdam* knowingly wore, uniforms bearing Defendants' name and logo; the ship physician on the MS *Zuiderdam* is considered and titled an officer of Defendants' cruise line.

66.     Defendants' medical personnel, including the doctors and nurses on board the MS *Zuiderdam*, were subject to the right of control by Defendants, and were acting within the scope of their employment or agency. For example: (1) the medical personnel were employed by Defendants; (2) the medical personnel were hired to work in a medical center on board the MS *Zuiderdam* that was created, owned and operated by Defendants; (3) the medical personnel were paid salaries and/or other employment related benefits directly by Defendants; (4) the medical personnel on board the MS *Zuiderdam* were considered to be members of the ship's crew; (5) the medical personnel were required to wear uniforms or other insignia furnished by Defendants; (6) Defendants put the medical personnel on board the MS *Zuiderdam* under the command of the ship's superior officers, and they

COMPLAINT - 18

were subject to the ship's discipline and the master's orders; (7) Defendants had the right to fire its medical personnel; (8) Defendants directly billed the Plaintiff and other passengers onboard the MS *Zuiderdam* for services rendered by its medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the medical personnel on board the MS *Zuiderdam* were subject to  the control of Defendants' shore-side medical department located in Seattle, Washington at Fleet Medical Operations.

67.     Defendants, through its medical personnel, owed Mrs. Gale the duty of exercising reasonable care under the circumstances. In particular, as Mrs. Gale suffered a stroke on board the MS *Zuiderdam* and was taken to the ship's medical center, Defendants owed Mrs. Gale the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

68.     Defendants, through its medical personnel, breached its duty of protecting Mrs. Gale from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Defendants, through its medical personnel, breached its duty in one or more of the following ways:

a.     Defendants failed to properly assess the condition of Mrs. Gale;

b.     Defendants failed to timely diagnose Mrs. Gale;

c.     Defendants failed to properly treat Mrs. Gale;

d.     Defendants failed to perform or arrange for appropriate diagnostics testing given Mrs. Gale's condition;

e.     Defendants failed to obtain consultations with appropriate specialists;

f.     Defendants failed to properly monitor Mrs. Gale;

g.     Defendants failed to air-evacuate Mrs. Gale from the ship so that

COMPLAINT - 19

she could promptly receive treatment;

h.    Defendants failed to timely divert the ship back to port in the United States so that Mrs. Gale could promptly receive treatment;

i.    Defendants  failed to evacuate Mrs. Gale by speed boat back to the United States;

j.    Defendants failed to contact the United States Coast Guard regarding the need for an air evacuation;

k.    Defendants failed to properly consult qualified shore-based personnel regarding Mrs. Gale's condition;

l.    Defendants failed to obtain a proper medical opinion regarding Mrs. Gale's condition;

m.    Defendants failed to utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. Gale's condition;

n.    Defendants failed to develop and institute adequate procedures and policies to address Mrs. Gale's medical situation;

o.    Defendants provided medical opinions and/or advice when they were not properly qualified and lacked proper licenses;

p.    Defendants failed to determine if Rand Memorial Hospital was capable of treating Mrs. Gale;

q.    Defendants failed to determine or inquire if Rand Memorial Hospital was equipped with functioning CT Scan machine to properly diagnose Mrs. Gale;

r.    Defendants failed to determine or inquire if Rand Memorial Hospital had proper medical specialists, such as neurosurgeons, capable of treating Mrs. Gale;

s.    Defendants failed by sending Mrs. Gale to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

t.    Defendants failed to ascertain, inquire, or ensure that Mrs. Gale could be transferred from the Bahamas to the United States expeditiously should she be unable to be treated at Rand Memorial Hospital;

u.    Defendants failed to ascertain, inquire, or plan for the event that the

BUDGE＆HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

airport in the Bahamas would be closed overnight, resulting in further excess and unreasonable delay to Mrs. Gale;

v.     Defendants failed to appreciate the severity of Mrs. Gale's worsening condition;

w.    Defendants failed to perform any procedure to Mrs. Gale's medical benefit;

x.     Defendants failed to properly advise Mrs. Gale's family of her urgent condition;

y.     Defendants failed to properly advise Mrs. Gale's family of her transfer options;

z.     Defendants failed to properly advise Mrs. Gale's family of her medical disembarkation options;

aa.   Defendants failed to receive informed consent to transfer Mrs. Gale to Rand rather than a comprehensive stroke center;

bb.   Defendants failed to properly ascertain sufficient information to determine where Mrs. Gale should be transferred;

cc.   Defendants deviated from the standard of care for treating patients in Plaintiff's condition.

69.     As a direct Defendants, through its medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Defendants.

70.     As a direct and proximate result of Defendants breaching its duty to Mrs. Gale, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Gale had received the appropriate care and treatment by being timely air evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

71.     Defendants are liable for punitive damages because they breached their duty to Mrs. Gale by conducting themselves in a wanton, willful and/or outrageous manner.  Mrs. Gale's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead,

COMPLAINT - 21

she was delayed by Defendants in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Defendants for compensatory damages, punitive damages, interest, court costs, and  all other relief recoverable under law or as this Court deems just and proper.

COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL

**(Vicarious Liability Based Upon Apparent Agency)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 51 of this Complaint.

72.     Defendants' medical personnel, including the doctors and nurses on board the MS *Zuiderdam*, were the apparent employees, agents, servants and/or persons otherwise authorized to act on behalf of Defendants. Thus, Defendants is vicariously liable for the acts and/or omissions of its medical personnel.

73.     Defendants made representations to the Plaintiff and other passengers onboard the MS *Zuiderdam* that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Defendants' benefit. For example: (1) Defendants promoted the medical personnel on board the MS *Zuiderdam* and represented them as being Defendants employees through brochures, internet advertising and/or signs, documents, and uniforms on the ship; (2) Defendants promoted the medical center on board the MS *Zuiderdam* and described it in proprietary language; (3) the medical personnel on board the MS *Zuiderdam* worked in the medical center that Defendants promoted and described in proprietary language; (4) Defendants directly bill the Plaintiff and other passengers onboard the MS *Zuiderdam* for services rendered by the onboard medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; (5) the medical personnel on board the MS *Zuiderdam* were required to wear uniforms or other insignia

COMPLAINT - 22

furnished by Defendants; (6) Defendants held out the medical personnel on board the MS *Zuiderdam* as members of the ship's crew; and (7) the medical personnel on board the MS *Zuiderdam* spoke and acted as though they were employed by Defendants. Defendants had knowledge of such representations but never took any action to indicate otherwise.

74.     Defendants' representations to the Plaintiff and other passengers onboard the MS *Zuiderdam* caused them to reasonably believe that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Defendants' benefit. Indeed, Defendants actually intended that the Plaintiff and other passengers onboard the MS *Zuiderdam* have such perception or belief because it is a marketing tool to induce passengers such as the Plaintiff to purchase cruises on Defendants' ships in the first place, to feel secure while on board Defendants' ships and/or to be a repeat customer.

75.     Defendants' representations to the Plaintiff and other passengers onboard the MS *Zuiderdam* induced their detrimental, justifiable reliance upon the appearance of agency. For example, Mrs. Gale justifiably relied upon Defendants' representations in deciding to purchase a cruise on the MS *Zuiderdam*.

76.     Defendants, through its medical personnel, owed Mrs. Gale the duty of exercising reasonable care under the circumstances. In particular, as Ms. Gale suffered a stroke onboard the MS *Zuiderdam* and was taken to the ship's medical center, Defendants owed Mrs. Gale the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

77.     Defendants, through its medical personnel, breached its duty of protecting Plaintiff from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

and assistance as ordinarily prudent persons would render under similar circumstances. Defendants, through its medical personnel, breached its duty in one or more of the following ways:

    a.      Defendants failed to properly assess the condition of Mrs. Gale;

    b.      Defendants failed to timely diagnose Mrs. Gale;

    c.      Defendants failed to properly treat Mrs. Gale;

    d.      Defendants failed to perform or arrange for appropriate diagnostics testing given Mrs. Gale's condition;

    e.      Defendants failed to obtain consultations with appropriate specialists;

    f.      Defendants failed to properly monitor Mrs. Gale;

    g.      Defendants failed to air-evacuate Mrs. Gale from the ship so that she could promptly receive treatment;

    h.      Defendants failed to timely divert the ship back to port in the United States so that Mrs. Gale could promptly receive treatment;

    i.      Defendants failed to evacuate Mrs. Gale by speed boat back to the United States;

    j.      Defendants failed to contact the United States Coast Guard regarding the need for an air evacuation;

    k.      Defendants failed to properly consult qualified shore-based personnel regarding Mrs. Gale's condition;

    l.      Defendants failed to obtain a proper medical opinion regarding Mrs. Gale's condition;

    m.      Defendants failed to utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. Gale's condition;

    n.      Defendants failed to develop and institute adequate procedures and policies to address Mrs. Gale's medical situation;

    o.      Defendants provided medical opinions and/or advice when they were not properly qualified and lacked proper licenses;

    p.      Defendants failed to determine if Rand Memorial Hospital was capable of treating Mrs. Gale;

COMPLAINT - 24

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

q.   Defendants failed to determine or inquire if Rand Memorial Hospital was equipped with functioning CT Scan machine to properly diagnose Mrs. Gale;

r.   Defendants failed to determine or inquire if Rand Memorial Hospital had proper medical specialists, such as neurosurgeons, capable of treating Mrs. Gale;

s.   Defendants failed by sending Mrs. Gale to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

t.   Defendants failed to ascertain, inquire, or ensure that Mrs. Gale could be transferred from the Bahamas to the United States expeditiously should she be unable to be treated at Rand Memorial Hospital;

u.   Defendants failed to ascertain, inquire, or plan for the event that the airport in the Bahamas would be closed overnight, resulting in further excess and unreasonable delay to Mrs. Gale;

v.   Defendants failed to appreciate the severity of Mrs. Gale's worsening condition;

w.   Defendants failed to perform any procedure to Mrs. Gale's medical benefit;

x.   Defendants failed to properly advise Mrs. Gale's family of her urgent condition;

y.   Defendants failed to properly advise Mrs. Gale's family of her transfer options;

z.   Defendants failed to properly advise Mrs. Gale's family of her medical disembarkation options;

aa.  Defendants failed to receive informed consent to transfer Mrs. Gale to Rand rather than a comprehensive stroke center;

bb.  Defendants failed to properly ascertain sufficient information to determine where Mrs. Gale should be transferred;

cc.  Defendants deviated from the standard of care for treating patients in Plaintiff's condition.

78.   As a direct Defendants, through its medical personnel, knew or reasonably should

BUDGE❖HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE: (206) 624-3060

have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Defendants.

79.     As a direct and proximate result of Defendants breaching its duty to Mrs. Gale, she has been left with permanent devastating cognitive and neurological deficits.  If Mrs. Gale had received the appropriate care and treatment by being timely air evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

80.     Defendants are liable for punitive damages because they breached their duty to Mrs. Gale by conducting themselves in a wanton, willful and/or outrageous manner.  Mrs. Gale's devastating, irreversible injury could have been prevented by timely and appropriate action.  Instead, she was delayed by Defendants in obtaining the prompt medical care and treatment that she desperately needed.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Defendants for compensatory damages, punitive damages, interest, court costs, and  all other relief recoverable under law or as this Court deems just and proper.

## COUNT V – NEGLIGENCE / HIRING AND RETENTION

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 51 of this Complaint.

81.     In light of Defendants' experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to Defendants that the MS *Zuiderdam* would have passengers similar in age to the Plaintiff, and passengers with common illnesses and emergencies such as the Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

COMPLAINT - 26

82.     Defendants owed Plaintiff the duty of exercising reasonable care to employ competent and fit medical personnel, including competent and fit doctors and nurses on board the MS *Zuiderdam*. However, Defendants' medical personnel, including the doctors and nurses on board the MS *Zuiderdam*, were incompetent or unfit to perform the requisite examination, evaluation and treatment for passengers like the Mrs. Gale, and Defendants knew or reasonably should have known that they were incompetent or unfit to do so.

83.     Defendants breached its duty by hiring incompetent and unfit medical personnel. For example, Defendants failed to conduct an appropriate background investigation to determine if they were qualified by training and/or experience, and if they were capable of conducting an appropriate examination and/or evaluation for purposes of treatment or referral for appropriate treatment to a shore side facility. An appropriate investigation by Defendants would have revealed the incompetence or unfitness of its medical personnel to examine, evaluate, treat or refer to an appropriate shore side facility or physician to treat conditions such as those Mrs. Gale suffered from.

84.     Defendants breached its duty by hiring and then retaining incompetent and unfit medical personnel. For example, Defendants became aware or should have become aware of problems with its medical personnel indicating incompetence and unfitness, but Defendants failed to take appropriate action such as investigating the problems with its medical personnel, discharging its medical personnel or otherwise remedying the problems by providing appropriate training and other resources. It was unreasonable for Defendants to hire and retain its medical personnel in light of the information it knew or should have known.

85.     As a direct and proximate result of the incompetence or unfitness of Defendants' medical personnel, Mrs. Gale suffered severe injuries resulting in her wrongful death. If the medical personnel had been competent and fit, Mrs. Gale would have received appropriate care and treatment

BUDGE & HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA 98104
TELEPHONE: (206) 624-3060

1    or been timely evacuated from the ship so that she would not have suffered such devastating,

2    irreversible injuries to her brain and body.

3        86.     Defendants are liable for punitive damages because they breached their duty to Mrs.

4    Gale by conducting themselves in a wanton, willful and/or outrageous manner.   Mrs. Gale's

5    devastating, irreversible injury could have been prevented by timely and appropriate action.   Instead,

6

7    she was delayed by Defendants in obtaining the prompt medical care and treatment that she

8    desperately needed.

9        WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the

10   Defendants for compensatory damages, punitive damages, interest, court costs, and  all other relief

11

12   recoverable under law or as this Court deems just and proper.

13                            DEMAND FOR JURY TRIAL

14

15       Plaintiff demands a trial by jury on all claims set forth herein.

16       RESPECTFULLY SUBMITTED this 29 day of January, 2019.

17

18                        By:   /s/ Edwin S. Budge
19                        Edwin S. Budge (WSBA # 24182)
                          ed@budgeandheipt.com
20                        **BUDGE and HEIPT, PLLC**
21                        705 Second Ave., Suite 910
                          Seattle, WA 98104
22                        Telephone:  206.624.3060
                          Facsimile:  206-621-7323
23

24

25                        **LEESFIELD SCOLARO, P.A.**
26                        Thomas Scolaro (FBN 178276)
                          scolaro@leesfield.com
27                        (*Pro Hac Vice* Admission Request Pending)
                          Thomas D. Graham (FBN 89043)
28                        graham@leesfield.com
                          (*Pro Hac Vice* Admission Request Pending)

COMPLAINT - 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2350 South Dixie Highway
Miami, Florida 33133
Telephone: (305) 854-4900
Facsimile: (305) 854-8266

Attorneys for Plaintiffs

BUDGE&HEIPT, PLLC
ATTORNEYS AT LAW
705 SECOND AVENUE, SUITE 910
SEATTLE, WA  98104
TELEPHONE:  (206) 624-3060

# POWER OF ATTORNEY

This section contains your Power of Attorney for property management.   In this document, you appoint an agent to act for you if you become incapacitated.  Your agent is authorized to transfer property to your Living Trust, to make withdrawals from your retirement assets, or to do anything else that you want your agent to do for you if you become incapacitated.

You should ask the first agent you have appointed if he or she is willing to accept this responsibility for you; if so, be sure he or she has the original or a copy of this document to prove his or her authority to act.

Your Power of Attorney may also contain a nomination of a conservator for you or your estate.

Exhibit A

# Notice to the Individual Signing the
# Illinois Statutory Short Form
# Power of Attorney for Property

PLEASE READ THIS NOTICE CAREFULLY. The form that you will be signing is a legal document. It is governed by the Illinois Power of Attorney Act. If there is anything about this form that you do not understand, you should ask a lawyer to explain it to you.

The purpose of this Power of Attorney is to give your designated "agent" broad powers to handle your financial affairs, which may include the power to pledge, sell, or dispose of any of your real or personal property, even without your consent or any advance notice to you. When using the Statutory Short Form, you may name successor agents, but you may not name co-agents.

This form does not impose a duty upon your agent to handle your financial affairs, so it is important that you select an agent who will agree to do this for you. It is also important to select an agent whom you trust, since you are giving that agent control over your financial assets and property. Any agent who does act for you has a duty to act in good faith for your benefit and to use due care, competence, and diligence. He or she must also act in accordance with the law and with the directions in this form. Your agent must keep a record of all receipts, disbursements, and significant actions taken as your agent.

Unless you specifically limit the period of time that this Power of Attorney will be in effect, your agent may exercise the powers given to him or her throughout your lifetime, both before and after you become incapacitated. A court, however, can take away the powers of your agent if it finds that the agent is not acting properly. You may also revoke this Power of Attorney if you wish.

This Power of Attorney does not authorize your agent to appear in court for you as an attorney-at-law or otherwise to engage in the practice of law unless he or she is a licensed attorney who is authorized to practice law in Illinois.

The powers you give your agent are explained more fully in Section 3-4 of the Illinois Power of Attorney Act. This form is a part of that law. The "NOTE" paragraphs throughout this form are instructions.

Durable Power of Attorney for Property for LILA GRACIELA KOHN GALE
Page 1

You are not required to sign this Power of Attorney, but it will not take effect without your signature. You should not sign this Power of Attorney if you do not understand everything in it, and what your agent will be able to do if you do sign it.

Please place your initials on the following line indicating that you have read this Notice:

$$\underline{L\,K\,G}$$

(Principal's initials)

# Illinois Statutory Short Form
# Power of Attorney for Property

1.      I, LILA GRACIELA KOHN GALE, 205 Sheridan Avenue, Highwood, Illinois, hereby revoke all prior powers of attorney for property executed by me and appoint (NOTE: You may not name co-agents using this form):

Name:      PABLO HERNAN ESTERSON

as my attorney-in-fact (my "agent") to act for me and in my name (in any way I could act in person) with respect to the following powers, as defined in Section 3-4 of the "Statutory Short Form Power of Attorney for Property Law" (including all amendments), but subject to any limitations on or additions to the specified powers inserted in paragraph 2 or 3 below:

(NOTE: You must strike out any one or more of the following categories of powers you do not want your agent to have. Failure to strike the title of any category will cause the powers described in that category to be granted to the agent. To strike out a category you must draw a line through the title of that category.)

(a)     Real estate transactions.

(b)     Financial institution transactions.

(c)     Stock and bond transactions.

(d)     Tangible personal property transactions.

(e)     Safe deposit box transactions.

(f)     Insurance and annuity transactions.

(g)     Retirement plan transactions.

(h)     Social Security, employment and military service benefits.

(i)     Tax matters.

(j)     Claims and litigation.

(k)     Commodity and option transactions.

(l)     Business operations.

(m)     Borrowing transactions.

(n)     Estate transactions.

(o)     All other property powers and transactions.

(NOTE: Limitations on and additions to the agent's powers may be included in this power of attorney if they are specifically described below.)

2.      The powers granted above shall not include the following powers or shall be modified or limited in the following particulars:

(NOTE: Here you may include any specific limitations you deem appropriate, such as a prohibition or conditions on the sale of particular stock or real estate or special rules on borrowing by the agent)

_____

_____

_____

3.      In addition to the powers granted above, I grant my agent the following powers:
(NOTE: Here you may add any other delegable powers including, without limitation, power to make gifts, exercise powers of appointment, name or change beneficiaries or joint tenants or revoke or amend any trust specifically referred to below)

**Authority to Fund Trust.** My agent is authorized to transfer, and convey any property or interest in property which I may own to the LISETTE KOHN GALE Living Trust, if then in existence, or to any other trust of which I am a beneficiary and under the terms of which I expressly have the power, exercisable alone or with others, to amend or revoke such trust, whether such trust was created before or after the execution of this power of attorney.

**Authority to Make Gifts.** My agent is authorized to pay my pledges to and make such gifts to such individuals, but not to the agent acting under this Power of Attorney, and in such amounts, as my agent, in his or her sole discretion, may deem appropriate, and if my agent determines that such action is not significantly detrimental to my welfare.

**Authority to Engage in Financial Transactions.** My agent is authorized to engage in financial transactions as agent with himself/herself in his/her individual capacity and I waive on behalf of myself and my estate all objections to any such transactions. I waive any conflict which may exist or which I have because my agent (who is a fiduciary when acting pursuant to the authority granted by this instrument) also is a beneficiary of my estate and/or otherwise derives some current or future benefit from such financial transactions.

**Authority to Renounce and Disclaim.** My agent is authorized to renounce and disclaim any property or interest in property or powers to which for any reason and by any means I may become entitled, whether by gift or by testate or intestate succession; my agent is further authorized to release or abandon any property or interest in property or powers which I may now have or hereafter acquire and, in exercising such discretion, my agent may consider, without limitation, such matters as

- the effect of such renunciation or disclaimer upon my estate's liability for estate, inheritance or other death taxes;
- the effect of such renunciation or disclaimer upon persons interested in my estate; and
- the effect of such renunciation or disclaimer upon persons who would receive the renounced or disclaimed property.

**Authority to Compensate Third Party Agents.** My agent is authorized to compensate separately any brokers, attorneys, auditors, depositories, real estate managers, investment advisors and other persons reasonably necessary for my agent under this Power of Attorney to exercise his or her powers.

**Authority to Change Accounts.** My agent is authorized to change any of my accounts, joint or otherwise, by renaming such accounts, removing my name from such accounts or otherwise dealing with any savings, checking or other banking or securities accounts with any financial institution or brokerage firm, whether said accounts are in my name alone or in joint tenancy with any other person.

**Trusts.** I authorize my agent to create, fund, amend, modify, or terminate revocable or irrevocable inter vivos trusts; accept transfers or distributions from any trustee of any trust; and add property to an existing or subsequently created trust.

**Estate Transactions.** My agent is authorized to engage in estate transactions, including Receipt, Release and Refunding Agreements and Waivers and Consents.

**Safe Deposit Box.** My agent is authorized to enter any safe deposit box or other place of safekeeping standing in my name alone or jointly with another and to remove the contents and to make additions.

**Enforcement Proceedings.** I authorize my agent to commence enforcement proceedings, at my expense, against any bank, savings and loan association, credit union, financial institution, brokerage firm, stock transfer agent, insurance company, title insurance company, or other person or entity that fails or refuses to honor this durable power of attorney.

**Insurance Transactions.** I authorize my agent to engage in insurance transactions, including applying for, maintaining, canceling, paying premiums on, increasing or decreasing, coverage, collecting, borrowing from, transferring ownership, surrendering and/or purchasing insurance policies.

**Government Agencies and Benefits.** My agent has the unrestricted power to deal with and obtain maximum entitlements and benefits relating to the Social Security

Administration, Veterans Administration, Social Services Departments, Social Security Disability Insurance, Supplemental Security Income, Medicaid, Medicare, Worker's Compensation and all other government benefits or entitlements programs, including claims, planning for eligibility, submission of applications and appeals. In this regard, my agent is authorized to execute and deliver any power of attorney or authorization to act form requested or required by a governmental agency. This power shall impose no affirmative duty on my agent to provide information and/or documentation to any government agency.

**Authority to Establish Special Needs Trust.** My agent is authorized to establish a Supplemental Needs Trust, an OBRA Trust ((d)(4)(A) Trust ) or a Pooled Payback Trust ((d)(4)(C) Trust) for my benefit.

**Authority with regard to Inter Vivos Trusts.** My Agent may create, fund, amend, modify, or terminate revocable or irrevocable inter vivos trusts; accept transfers or distributions from any trustee of any trust; and add property to an existing or subsequently created trust.

Specifically, my Agent may create and fund a qualified income trust under United States Code, Title 42, Section 1396p(d)(4)(B) if such a trust should be deemed necessary to qualify me for Medicaid benefits and to make arrangements for the diversion of my income to such a trust as necessary to comply with applicable Medicaid rules and regulations.

**Intent to Return Home.** I hereby express my intention to remain in my home if at all possible, regardless of my physical, emotional or mental condition; If I should be in a hospital, rehabilitation center or nursing home, I hereby express my intention to return home, and my agent shall take all steps including, but not limited to, executing any document, affidavit or Declaration of Intent to Stay/Return Home on my behalf, to effectuate the same.

**Caregiver Agreements.** I authorize my agent to enter into, execute, modify, alter or amend any contract or agreement (for example, a Caregiver Agreement or Personal Services Contract) pertaining to my medical, personal or general care that I may require at my residence, assisted living facility, nursing facility, or in another's residence on my behalf. I expressly authorize my agent to serve as a caregiver under any such agreement and to be paid in accordance with the terms and conditions of such agreement, provided, however, that such services are compensated at fair market value.

**Real Estate Transactions, Fixtures and Personalty.** I authorize my agent to engage in real estate transactions or transactions which involve any proprietary lease or stock evidencing my ownership of a cooperative apartment, including all fixtures and articles of personal property used in connection with the real property (my agent may include such property in the deeds, mortgages, agreements, and any other instruments to be executed and delivered in connection with real estate transactions and which may be described in said instruments with more particularity).

**Business Activities.** I authorize my agent to invest in, contribute to, establish, create, and fund any existing or newly created partnership, corporation, limited liability company, limited liability partnership, limited partnership, or other entity and to exercise all rights pertaining thereto.

**Authorization to Deal With Tax Authorities.** My agent is authorized:

- To deal with tax authorities, to execute and sign on my behalf any and all Federal, state, local and foreign income and gift tax returns (as authorized under Section 1.6012-1(a)(5) of the Code of Federal Regulations or under any state, local, or foreign authority), including estimated returns and interest, dividends, gains and transfers, and to pay any taxes, penalties and interest due thereon;

- To represent me or to sign an Internal Revenue Service Form 2848 (Power of Attorney or Declaration of Representative) or Form 8821 (Tax Information Authorization), or comparable authorization, appointing a qualified lawyer, certified public accountant or enrolled agent (including my agent if so qualified) to represent me before any office of the Internal Revenue Service, state, local or foreign taxing authority with respect to the types of taxes and years referred to above, and to specify on said authorization said types of taxes and years;

- To receive from or inspect confidential information in any office of the Internal Revenue Service, state, local or foreign tax authority;

- To receive and deposit, in any one of my bank accounts, or those of any revocable trust of mine, checks in payment of any refund of Federal, state, local or foreign taxes, penalties and interest;

- To execute waivers (and offers of waivers) of restrictions on assessment or collection of deficiencies in taxes and waivers of notice of disallowance of a claim for credit or refund;

- To execute consents extending the statutory period for assessment or collection of such taxes; to execute Offers in Compromise and Closing Agreements under Section 7121 or comparable provisions of the Internal Revenue Code, as amended, or any federal, state, local or foreign tax statutes or regulations;

- To delegate authority or to substitute another representative for any one of those previously appointed by me or my Agent; to sign tax returns and tax powers of attorney; and to receive copies of all notices and other written communications involving my federal, state, local or foreign taxes at such address as my agent may designate.

**Employment of Professionals.** Retain, discharge and pay, in the sole discretion of my agent, for the services of attorneys, accountants, financial planners, geriatric care managers, social workers and any other health care professionals. My agent is not obligated to retain or pay for any health care professional on behalf of the principal.

**Domestic Pets.** I authorize my agent to make reasonable expenditures for the care, maintenance, support and general welfare of any domestic pet I may own. I authorize any and all payments from my funds for pet care provided by any person or entity, including my agent.

**Companionship.** I authorize my agent to provide for such companionship for me, in the sole discretion of my agent, as will meet my needs and preferences at a time when I am disabled or otherwise unable to arrange for such companionship myself.

**U.S. Mail.** I authorize my agent to open, read, respond to and redirect my mail; to represent me before the U.S. Postal Service in all matters relating to mail service.

**Duty to Account.** My agent shall render statements of account of receipts, disbursements, principal on hand, and transactions conducted on my behalf if 1) ordered by a court; 2) requested by me, a guardian, conservator, trustee or other fiduciary acting on my behalf; 3) requested by anyone who is a legatee or beneficiary of my will or trust; or 4) following my death, if requested by the executor or personal representative of my estate. If so requested, my agent shall comply with the request within 30 days or provide a writing or other record substantiating why additional time is needed and shall comply with the request within an additional 14 days.

**HIPAA Authorization.** All agents and successor agents appointed in this power of attorney shall have the power and authority of a designated representative for all purposes under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. Section 1320d and 45 C.F.R. Parts 160-164. My agent and successor agent are authorized to execute releases and other documents necessary to obtain disclosure of individually identifiable health information, medical records, and patient files, including psychotherapy notes. This information includes, but is not limited to, any written opinion or assessment of my decision making capacity. This authorization and release apply to all information protected by HIPAA and shall only expire if I revoke this power of attorney.

**Access to Medical Records.**

    1.    **Authorization to Agent** - My agent is authorized to review any information, verbal or written, regarding my physical or mental health, including medical and hospital records, and to execute any releases and/or other documents that may be required in order to obtain such information, and to disclose or deny such information to such persons, organizations, firms or corporations as my agent shall deem appropriate.

    2.    **Authorization to Physicians** - I hereby authorize all physicians and psychiatrists who have treated me and all providers of health care, including hospitals, to release to my agent all information and photocopies of any records which my agent may request. If I am incompetent at the time my agent shall request such information, all persons are authorized to treat any such request for information by my agent as my personal request and to honor such requests on that basis. I hereby waive all privileges which may be applicable to such

information and records and to any communication pertaining to me that is made in the course of any confidential relationship recognized by law. My agent may also disclose such information to such persons as my agent shall deem appropriate.

(NOTE: Your agent will have authority to employ other persons as necessary to enable the agent to properly exercise the powers granted in this form, but your agent will have to make all discretionary decisions. If you want to give your agent the right to delegate discretionary decision-making powers to others, you should keep paragraph 4, otherwise it should be struck out.)

4.    My agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(NOTE: Your agent will be entitled to reimbursement for all reasonable expenses incurred in acting under this power of attorney. Strike out paragraph 5 if you do not want your agent to also be entitled to reasonable compensation for services as agent.)

5.    ~~My agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.~~

(NOTE: This power of attorney may be amended or revoked by you at any time and in any manner. Absent amendment or revocation, the authority granted in this power of attorney will become effective at the time this power is signed and will continue until your death, unless a limitation on the beginning date or duration is made by initialing and completing one or both of paragraphs 6 and 7.)

6.    This power of attorney shall become effective on the date my agent hereunder determines that I am unable to give prompt and intelligent consideration to financial decisions; such determination shall be made only with the concurring opinion of a physician who has examined or treated me within the last three months.

(NOTE: Insert a future date or event during your lifetime, such as a court determination of your disability or a written determination by your physician that you are incapacitated when you want this power to take effect.)

7.    This power of attorney shall terminate on my revocation of this power of attorney or upon my death, whichever shall first occur.

(NOTE: Insert a future date or event during your lifetime, such as a court determination of your disability or a written determination by your physician that you are incapacitated, when you want this power to first take effect.)

(NOTE: If you wish to name one or more successor agents, insert the name and address of each successor agent in paragraph 8.)

8.    If any agent named by me shall die, become incompetent, resign or refuse to accept the office of agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such agent:

Name:    ARIEL TOMAS ESTERSON

For purposes of this paragraph 8, a person shall be considered to be incompetent if and while the person is a minor or an adjudicated incompetent or disabled person or the person is unable to give prompt and intelligent consideration to business matters, as certified by a licensed physician.

Durable Power of Attorney for Property for LILA GRACIELA KOHN GALE
Page 7

(NOTE: If you wish to, you may name your agent as guardian of your estate if a court decides that one should be appointed. To do this, retain paragraph 9, and the court will appoint your agent if the court finds that this appointment will serve your best interests and welfare. Strike out paragraph 9 if you do not want your agent to act as guardian.)

9.     If a guardian of my estate (my property) is to be appointed, I nominate the agent acting under this power of attorney as such guardian, to serve without bond or security.

10.    I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my agent.

(NOTE: This form does not authorize your agent to appear in court for you as an attorney-at-law or otherwise to engage in the practice of law unless he or she is a licensed attorney who is authorized to practice law in Illinois.)

11.    The Notice to Agent is incorporated by reference and included as part of this form.

Dated: May 14, 2012

Signed: _____
               LILA GRACIELA KOHN GALE,

Principal

(NOTE: This power of attorney will not be effective unless it is signed by at least one witness and your signature is notarized, using the form below. The notary may not also sign as a witness.)

STATE OF ILLINOIS      )
                             ) SS
COUNTY OF COOK        )

The undersigned, a notary public in and for the above county and state, certifies that LILA GRACIELA KOHN GALE, known to me to be the same person whose name is subscribed to the foregoing document, appeared before me in person and acknowledged signing and delivering the instrument as his free and voluntary act, for the uses and purposes therein set forth.

Dated: May 14, 2012

_____
Jessica M. Wojtowicz, Notary Public

"OFFICIAL SEAL"
Jessica M. Wojtowicz
Notary Public, State of Illinois
My Commission Expires 9/29/2013

Durable Power of Attorney for Property for LILA GRACIELA KOHN GALE